No. 39,144

FRED D. ASENDORF, LEROY GARNETT, EDWARD H. BRANDIS, DICK WULF, WM. BRANDES, WALTER BRANDES, JOHN F. ASENDORF, WM. WIECHMAN, HENRY WIECHMAN, DEAN A. GOLDSMITH, ROBERT KERR, ROBERT BROWN, BEN F. KERR, JIM MATZEN, W. R. SCHROEDER, HARRY KELCH, ROBERT MEREDITH, JACK MATZEN, JOHN GERLACH, HOWARD SHIPLEY, SAM KERR, DALE GOLDSMITH, HAROLD FEAREY, and ROBT. STOEHR, *Appellants,* v. COMMON SCHOOL DISTRICT No. 102 of Sedgwick County, Kansas; KARL PETERSEN, HENRY BUNCK and ED HOMMERTZHEIM, Members of Board of Common School District No. 102; EDWIN J. GARD; PEARL KENSLER, County Superintendent of Public Instruction of Sedgwick County; RUFUS DEERING, Treasurer of Sedgwick County; JOHN EDWARDS, BYRON FARMER and HOWARD SCOTT, Members of the Board of County Commissioners of Sedgwick County; OTIS SCHWEITER, County Clerk of Sedgwick County; GEORGE ROBB, Auditor of the State of Kansas; ADEL F. THROCKMORTON, Superintendent of Public Instruction of the State of Kansas; and RICHARD T. FADELY, Treasurer of the State of Kansas, *Appellees.*

(266 P. 2d 309)

Opinion filed January 23, 1954.

*Robert C. Allan* and *Everett C. Fettis,* both of Wichita, Kansas, argued the cause, and *Keith M. Curfman,* of Wichita, Kansas, was with them on the brief for the appellants.

*W. D. Jochems,* of Wichita, Kansas, argued the cause, and *J. Wirth Sargent, Emmett A. Blaes, Roetzel Jochems, Robert G. Braden, S. C. Durbin, J. Francis Hesse, James W. Sargent,* and *Stanley E. Wisdom,* all of Wichita, Kansas, were with him on the brief for the appellees.

The opinion of the court was delivered by

THIELE, J.: This is an appeal from a judgment dismissing an action for a declaratory judgment and for injunctive relief for the reason the questions presented by the pleadings were moot.

In view of the contentions presented by the appeal the very lengthy petition will not be reviewed in detail. In substance plain-

tiffs alleged in their first cause of action that they were residents and taxpayers of Common School District No. 102 and paid taxes to support it; that they had a pecuniary and resident citizen's interest in the expenditure of public funds for the operation of the free public schools and were personally and pecuniarily interested in the enforcement of the state constitution and laws forbidding the expenditure of public funds in aid of any church, creed or sectarian purposes, and interested in the enforcement of the constitution of the United States prescribing the separation of the church and state and which forbids the taking of private property without due process of law. After alleging the status of the various defendants, it was further alleged that for many years the school district had maintained an elementary school at Garden Plain in a building capable of handling in excess of 120 pupils; that in 1951 the school was moved to the rural high-school building at Garden Plain and there conducted under conditions alleged; that for many years St. Anthony Parish maintained a parochial school at Garden Plain; that on May 5, 1951, the school board of District 102 passed a resolution assuming the responsibility of educating the children of the parochial school at the parochial school building and maintaining the building and equipment; that the board hired and paid four teachers at the latter school; that during the school year 1951-'52 the school board maintained and operated the parochial school and the public school notwithstanding the public school buildings were adequate to meet the demands of all pupils. After pleading provisions of the constitution of the United States and of the constitution of the state of Kansas, it was alleged the defendant school and school board was not entitled to levy and collect taxes or state moneys for the purpose of operating public schools and expend such funds in respect to the parochial school because in violation of the constitutional provisions; that the school board was not entitled to include the parochial school in the common schools of the district for levying, collecting and paying public funds to be used in its support and maintenance for fifteen asserted reasons which included presence in the school rooms of religious pictures and other furnishings peculiar to the Roman Catholic faith; that the school retained its identity as a parochial school; that three of the four teachers in the school belonged to a named church order and were garbed in a particular manner; that the teachers were chosen by the local priest and other matters that need not be set forth here. That all of the facts just referred

to were known to the school board and the use of public funds to support the parochial school was in violation of the constitutional mandates mentioned; that plaintiffs objected to the manner of operation and support of the parochial school by the school board of District No. 102, but notwithstanding the school board continued to include the parochial school with the common-school system and failed and refused to heed plaintiffs' protests, thereby bringing about the unlawful apportionment of public school moneys to the support of the parochial school; that an actual controversy existed between the plaintiffs and the defendants in twelve instances, all of which presented the general proposition of the use of public school funds for the support of the parochial school. The prayer was that the court adjudge the rights of the plaintiffs and the respective powers, rights, liabilities and duties of the defendants and by declaratory judgment decree relief in thirty-three specified instances, the general tenor of which concern public support of the parochial school. In a second cause of action the plaintiffs incorporated the greater portion of their first cause of action and alleged that they were entitled to an injunction against the defendants in twenty-four particulars, which may be said to be divisions of the whole contention that public funds may not be used to maintain and support the parochial school, and they prayed for injunctive relief and such other relief as were just and proper. In a negative way we note that at no place in the petition was there any allegation that any burden suffered by the plaintiffs or any tax or assessment levied or to be levied, was peculiar to the plaintiffs or any different from the taxpayers of the entire district, nor was there any allegation of any statute or of any fact that authorized them to maintain the action.

To the above petition the defendant state officials filed an answer admitting certain allegations, but neither admitting nor denying the remainder and praying that plaintiffs be required to prove them. The members of the school board and the school principal answered by a general denial and other defendants answered admitting certain allegations and denying generally.

When the matter first came on for trial on February 25, 1953, a continuance to March 2, 1953, was had by reason of the absence of counsel. On the latter date, counsel for the school board and the school principal presented a verified supplement to the board's answer and a motion to dismiss, which had just been filed.

Although some of the allegations of the last mentioned pleading

may be termed argumentative or self-serving, the substance of the pleading was that defendants at all times during the pendency of the action had recognized that the claims of the plaintiffs would be disruptive of community harmony and as a result they had striven to reconcile differences and had followed applicable rules of law in the administration of the affairs of the district to prevent disunity, and that as a result of their efforts measures had been effected which rendered plaintiffs' complaints moot and made unnecessary any judicial determination whether any of the particular acts of the common school district were legal or illegal; that the owners of the parochial school building in which the common-school district had theretofore operated had permanently withdrawn use of the premises from the common-school district and had agreed the rental arrangement be terminated, and that the teachers there employed and about whom plaintiffs complained had agreed to release the defendant school board from any liability, and that in accordance, the owners of the parochial school building did on February 28, 1953, deliver to the defendants a statement terminating the use of the building, and that on the same day the defendants had held an official meeting accepting the same. Copies of the statement and of the school board's minutes were attached to the supplement to the answer. The defendants further alleged they had no intention of renewing any arrangement for the use of the parochial school building nor of renewing in any manner contracts for the employment of the teachers, and that with the completion of the foregoing, all matters complained of by the plaintiffs as being improper or illegal had been eliminated and permanently discontinued, and as a result no issue remained between plaintiffs and defendants, nor did there exist any actual controversy with right to any consequential relief, and that all matters theretofore complained of were moot. The statement to the school board was signed by St. Anthony's Church committee and notified the board that upon receipt of the notice by the school board the parochial school premises would no longer be available for the use of the school district and all rights of occupancy and agreements for rental were terminated. The minutes of the school board show that a meeting was held in Wichita pursuant to notice and a discussion was had about the above notice of termination of the use of the parochial school building, and upon motion made and carried, the termination was accepted and that part of the school operation was

discontinued. The board also accepted the resignations of three teachers who served at the parochial building school and instructed its attorneys to attempt to obtain a resignation from the fourth teacher.

The trial proceeded for hearing on the supplement to the answer and on the motion to dismiss. We shall not review the lengthy colloquy between the court and counsel at which some analysis was made of the pleadings and the issues presented, nor of the arguments of counsel interspersed therein further than to note that plaintiffs' counsel admitted correctness of the two documents pertaining to termination of the use of the parochial school building and of the school board's minutes, and that such counsel proffered certain testimony to support the allegations of their petition. At the conclusion of the hearing, the trial court found that all questions as to actions of the school board complained of in the petition were moot; that the court could not grant an injunction and that there was not sufficient public interest to warrant a hearing for a declaratory judgment, and rendered judgment accordingly.

In due time plaintiffs filed their motion for a new trial alleging abuse of discretion by the trial court; that they were not afforded a reasonable opportunity to present their evidence and be heard on the merits; erroneous rulings; and that the decision was given under the influence of prejudice and was contrary to the evidence. Insofar as questions of reasonable opportunity to present evidence and that the decision was contrary to the evidence are concerned we note that on the hearing of the motion for a new trial, there was no showing, as required by G. S. 1949, 60-3004, of the evidence referred to in the proffer made at the trial and there was nothing to review. The motion for a new trial was denied and plaintiffs perfected their appeal to this court, specifying error in the particulars later mentioned.

Appellants' first contention is that there was sufficient evidence, *i. e.* pleaded facts, before the trial court that it was advised the issues involved were of great public interest, and that the unlawful acts complained of could recur at any time. Although not specifically so stated, appellants seem to concede that, in view of what transpired, the allegedly unlawful acts have ceased, and as to those acts the issues are moot for they expressly state that as a general rule it may be said that a case may become moot by events occurring after the commencement of the action whereby the case loses

its controversial character, but that there are exceptions to that rule, one being that the case will not be regarded as moot where it is one of great public importance as where it involves a determination of public rights or interests under conditions which may recur at any. time, and in support they cite Anderson on Actions for Declaratory Judgments, Vol. 1, page 136, and 1 C. J. S., pp. 1017 and 1018, where statements of similar import may be found. After stating they could find no decision of this court involving similar facts and a review of resulting questions of law, appellants direct attention principally to *Zellers v. Huff*, 55 N. M. 501, 236 P. 2d 949, which was a class suit authorized under statutes of that state, wherein plaintiffs sought a declaratory judgment involving the teaching of religion in the public schools of the whole state. After trial in the lower court and before argument on appeal, the state board of education and the archbishop of the diocese of Santa Fe took certain actions that disposed of the practices of which complaint was made. In disposing of a contention the case was then moot, the supreme court noted there might be changes in the personnel of state and church officials and said:

"Lacking an authoritative declaration of law on the subjects the individuals holding such offices may change their policies when and as they might be advised. We decline to treat the questions as moot and will proceed to a decision of the matters raised by the appeal of the appellants and the cross appeal of the Religious."

Other cases relied on by appellants include *Lawrence v. Hancock*, 76 F. Supp. 1004, and *Culver v. City of Warren*, 84 Ohio App. 373, 83 N. E. 2d 82, both of which were actions by individual Negroes for judgment as to right to use swimming pools and to enjoin discrimination on account of race. The cities had leased the pools, the leases had expired, and it was contended the cases were moot, a claim which was denied. Another case cited is *Morris v. Williams*, 149 F. 2d 703, where plaintiff contended he was discriminated against as a Negro teacher. In that case, however, the defendants in their brief made contention the matter was moot by reason of certain matters not in the record, and the court said that under the circumstances it could not consider the matters thus brought to its attention and since the controversy remained it was its duty to adjudicate the issues which were not moot. The last case cited which we shall notice is *Walling v. Helmerich & Payne*, 323 U. S. 37, 89 L. Ed. 29, 65 S. Ct. 11, which was a suit by the administrator

under the fair labor standards act to enjoin defendants from using a certain employment contract. After the complaint was filed in the district court, the defendants ceased use of the contract complained of and substituted a different plan. The district court denied the injunction on the merits and the circuit court of appeals affirmed. In granting certiorari the supreme court asked for a discussion on the question whether the case was moot. In its opinion the supreme court without discussion held the case was not moot and that despite defendant's cessation of the challenged conduct a controversy between the parties upon the legality of the "split-day" plan remained, and that voluntary discontinuance of an alleged illegal activity did not operate to remove a case from the ambit of judicial power.

In view of the limited contention made by the appellants we need not review our decisions showing that where it appears by reason of changed circumstances between institution of an action and a trial thereon that a judgment would be unavailing as to the particular issue presented the case is moot but content ourselves by referring to our decision of June 6, 1953, in *Andeel v. Woods*, 174 Kan. 556, 258 P. 2d 285. Although the facts in that case do not exactly parallel those pleaded in the case at bar, the legal principles involved were the same, except on the question of great public interest. In that opinion may be found a review of some of our authorities on the question whether a case is moot. It was there held:

"This court will not review a case on its merits in which only injunctive relief was sought and denied and where, by reason of a change in circumstances since the judgment was rendered, a judgment of reversal would be wholly ineffectual. Nor will it consider the granting of a new trial in such a case after it has become impossible to have a new trial in the same case."

The only question remaining under this contention is whether, if the matter is of great public importance, a different rule should be followed. We have previously adverted to the fact that in their petition the plaintiffs did not allege that any burden to be suffered by them or any tax or assessment levied or to be levied for school purposes was peculiar to them or any different from taxpayers of the entire district, or any statute or any fact that authorized plaintiffs to maintain the action. In Anderson on Actions for Declaratory Judgments, Vol. 1, pg. 313, it is said:

"The general rule is that a party having only such interest as the public generally has cannot maintain an action, and this rule is applicable to declaratory judgment actions."

In the early case of *Nixon v. School District*, 32 Kan. 510, 4 Pac. 1017, the action was to enjoin the erection of a schoolhouse upon a particular site, the petition alleging that plaintiff was a citizen and taxpayer of the district; that the question involved was one of common or general interest to many persons; that the parties were numerous and its was impracticable to bring them all before the court and that plaintiff brought the action for the benefit of all. After citing cases going back to *Craft v. Jackson Co.*, 5 Kan. 518, stating the rule, this court held:

"A private person cannot, by virtue of being a citizen and tax-payer, maintain an action against a school district or its officers where the act complained of affects merely the interests of the public in general, and not those of such private person in particular."

Since that case was decided the question has recurred on many occasions under varying types of actions and states of fact, and in one of the latest, *Dennis v. State Board of Barber Examiners*, 174 Kan. 561, 257 P. 2d 940, decided June 6, 1953, where some of our decisions were cited, it was held that:

"Private citizens, without interests or rights distinct from those of other citizens, cannot maintain an action in mandamus to compel public officials to perform their duties."

Although we are well aware that the motion to dismiss was predicated on the claim the controversy was moot and not on any lack of capacity of plaintiffs to maintain the action, we cannot reach any conclusion that the trial court should have ruled otherwise than it did, when it is borne in mind that plaintiffs could not have maintained an action on that ground. For aught the record shows the rule above noted may have been the basis for the trial court's judgment there was not sufficient public interest to warrant a hearing for a declaratory judgment.

Appellants contend further, however, that the action of the school board in attempting to make the case moot was illegal. Appellees object to any consideration of this contention urging the question was not raised in the trial court. We shall not pause to determine whether the factual basis is correct or not, but assuming that the question was raised below, and that consideration is not foreclosed because of plaintiffs' lack of capacity to raise the question, we note that it is predicated on the proposition that the school board could not hold a meeting outside the geographic limits of the district and there agree to surrender its rental arrangement of the parochial

school building and to discontinue operation of a school there, citing *Dunfield v. School District*, 138 Kan. 800, 28 P. 2d 987. The situation is not that simple. The defendant school board was charged with unlawfully maintaining the parochial school building and the school operated there. If it recognized the illegality, it could desist without more. However the fact pleaded is that the owners of the parochial school building terminated the arrangement for use of the building and the conduct of the school, and the action of the school board in accepting termination, even if void, did not re-establish the allegedly illegal conduct of which the plaintiffs complained. During the course of the hearing before the trial court, there was also some discussion as to the number of students to be counted in determining the amount due the school district from certain state and county elementary school funds and in the course thereof the school board held a meeting in the city of Wichita and waived its right to certain participations. It is contended the meeting was illegal because not held within the district and further that the school board was without power to waive in any event. We shall not analyze the pleaded facts nor review the statutory provisions applicable, for in accordance with decisions above mentioned, the plaintiffs are without capacity to maintain the action for alleged abuse of power.

And finally it is contended that a finding the case is moot places appellants as well as various officials who are defendants, in the position of being confronted with the defense of *res judicata* in possible future actions. In support appellants direct attention to *Moore v. Smith*, 160 Kan. 167, 160 P. 2d 675. Briefly stated that was an action for an injunction, the question being who was entitled to the office of sheriff during a certain period. The trial court rendered a judgment against defendant who appealed. The appellee moved to dismiss the appeal on the ground the term had expired. Reference is made to that opinion for the review of decisions therein. In effect this court held that expiration of the term did not settle who was entitled to the salary for the time involved and denied the motion to dismiss. Although that case is of interest on many of the questions generally in the case at bar, there is nothing in it warranting any conclusion that any dismissal of the instant case as moot is *res judicata* of any matter concerning which appellants had no standing to complain.

While we do not denominate the trial court's ruling as founded on

erroneous reasons, even if that were the case the judgment, which is correct in result, would not be reversed. See cases collected in West's Kansas Digest, App. & E., # 854 and Hatcher's Kansas Digest, App. & E., # 433.

The judgment of the trial court is affirmed.