No. 40,684

D. G. EURTON, d. b. a. PETER RABBIT MOTOR FREIGHT, P. F. FELTEN, d. b. a. FELTEN TRUCK LINE, W. R. HOUDYSHELL and D. G. KOELLING, a Partnership, d. b. a. H & K TRUCK LINES, *Appellees*, v. THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS and MARION BEATTY, Chairman, HARRY G. WILES and RICHARD C. BYRD, Commissioners, *Appellants*.

No. 40,685

D. G. EURTON, d. b. a. PETER RABBIT MOTOR FREIGHT, P. F. FELTON, d. b. a. FELTON TRUCK LINE, W. R. HOUDYSHELL and D. G. KOELLING, a Partnership, d. b. a. H & K TRUCK LINES, *Appellees*, v. THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS and MARION BEATTY, Chairman, HARRY G. WILES and RICHARD C. BYRD, Commissioners, *Appellants*.

(319 P. 2d 174)

Opinion filed December 7, 1957.

*Clyde E. Milligan,* General Counsel, and *Hollis B. Logan,* Assistant General Counsel, argued the cause and were on the briefs for the appellants.

*John E. Jandera,* of Topeka, argued the cause, and *J. Wm. Townsend,* of Topeka, and *William Mitchell,* of Hutchinson, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J.: These consolidated appeals are from a judgment of the district court of Reno County which vacated and set aside orders of the state corporation commission as being unlawful and unreasonable.

Two common carriers, Golden Belt Express Company, Inc., and The Central News Express, Inc., filed applications with the commission for extensions of their respective existing routes. The applications were consolidated for hearing and were granted to the extent hereinafter shown. Competitive carriers (appellees herein) appealed to the district court. The appeals were consolidated. The court ruled as above mentioned and the commission has appealed to this court.

The findings of fact of the trial court tell the story, and are as follow:

### "FINDINGS OF FACT

"1. These two cases involve applications on the part of the Golden Belt Express Company, Inc., of Great Bend, Kansas, and The Central News Express, Inc., of Wichita, Kansas, for the extension of their existing routes. The cases were consolidated for hearing before the Kansas Corporation Commission and were consolidated for hearing and so presented before this court.

"2. The Golden Belt Express filed application and was granted permission to extend its service from Bushton to Lorraine to Holyrood to Ellsworth; also,

over U. S. 40 from Ellsworth to Black Wolf, Wilson, Dorrance, Bunker Hill, Russell, Gorham, Walker, Victoria, Toulon and Hays, then via U. S. 40 to Russell, thence via U. S. 281 to Hoisington; also from Ness City via U. S. 283 to Ransom and via K 4 to Brownell and McCracken; also from Jetmore via U. S. 283 to Dodge City, thence via U. S. 50S and K 45 to Spearville, Offerle and Kinsley. The authority granted was to transport newspapers, periodicals, magazines and light express consisting of parcels not more than 3 feet in height, width or breadth or six feet in length and not to exceed 200 pounds in weight.

"3. The Central News Express filed application to extend service from Wichita via K 96 to Maize, Colwich, Andale, Mount Hope, Haven, Hutchinson, Nickerson, Sterling and Lyons; also from Wichita via U. S. 54 to Goddard, Garden Plain, Kingman, Calista, Cunningham, Cairo, Pratt, thence via K 61 to Preston, Turon, Langdon, Arlington, Partridge and Hutchinson, thence on U. S. 50-S to Burrton, U. S. 50S and K 89 to Halstead and U. S. 50S to Newton. This application was granted except as to service between Wichita and Mount Hope and between Wichita and Kingman. Authority was limited to light express consisting of packages and shipments not exceeding 3 feet in height, width or breadth or 5 feet in length and not over 200 pounds in weight.

"4. Felton Truck Lines operate at least one and sometimes two daily overnight schedules out of Wichita, serving directly all points west of Salina on U. S. 40 to Hays and beyond except Russell, and thus parallels the route sought by Golden Belt Express and serves the same communities from Ellsworth to Hays except Russell. This line also interlines, with H & K Truck Lines at Russell, freight bound from Great Bend to Hays and other points served by Felton.

"5. Under its general commodity authority, Felton Truck Lines transports packages and shipments of less than 200 pounds, and such business is vital to the company's successful operation and continued existence.

"6. No requests had ever been received by Mr. Felton, the owner and operator of Felton Truck Lines, from any witness who appeared at the hearing, for any additional schedules from Wichita to any of the above points, nor had Felton ever received any request for additional schedules from Great Bend to Russell, but he is financially able to and would add additional equipment and provide additional schedules were there sufficient public demand to warrant the same.

"7. Peter Rabbit Motor Freight, owned and operated by D. G. Eurton, operates a freight line transporting general commodities out of Wichita, serving, among other communities, Halstead, Burrton, Hutchinson, Nickerson, Sterling, Lyons, Holyrood, Lorraine and Ellsworth. This line thus serves the same communities to the north and west of Wichita, except Haven and Bushton, as would be served by the Central News Express, and approximately parallels the proposed line of Central from Hutchinson to Ellsworth. Three daytime schedules per day, each way, are operated by Peter Rabbit from Wichita to Hutchinson and two from Hutchinson on north to Ellsworth. Store-door pick up and delivery service is provided.

"8. Thirty-nine percent of the shipments handled by Peter Rabbit are 200 pounds or less in weight, the loss of any part of which would have a definite adverse effect upon its business.

"9. Peter Rabbit Freight has, in the past, transported news print for the Wichita Beacon, and received no complaint. The only other customer of this truck line who appeared at the hearing was Western Supply, from whom no complaint as to service had ever been received; that Mr. Eurton is financially able and is willing to provide additional equipment and schedules if the public demand warrants it.

"10. The Santa Fe Trail Transportation Company operates a truck line out of Wichita via Burrton and Halstead to Hutchinson, thence through Nickerson, Sterling and Lyons to Great Bend, and serves said communities. This line serves the same cities out of Wichita, except Haven, as would the Central News Express and parallels Central's proposed extension from Hutchinson to Lyons. Two schedules per day, five or six days per week, are operated from Wichita to Great Bend which handle traffic for Hutchinson, Nickerson, Sterling and interlines freight to Russell. Two additional schedules are operated from Hutchinson to Great Bend that can handle overflow traffic.

"11. Santa Fe Trail Transportation also operates three schedules per day, five days a week, from Wichita to Dodge City, two by way of Pratt and one by Hutchinson, the former serving Cunningham, Cairo and Calista, the same being points sought to be served by Central News, and both schedules serving Kinsley and intermediate points to and including Dodge City, the latter being on the proposed extended route of Golden Belt. An additional five day per week schedule is operated between Wichita and Pratt directly.

"12. In addition to the above schedules, Santa Fe operates a schedule between Wichita and Garden City that often handles freight for Pratt and Dodge City, one that operates five days a week from Salina to Dodge City that can serve intermediate points between Dodge and Kinsley, and a morning schedule from Dodge City to Kinsley and return.

"13. Of the freight handled by Santa Fe Trail Transportation Company, 66 percent consists of shipments 200 pounds or less, which provide a vital portion of Santa Fe's revenues and the loss of which would jeopardize its service.

"14. The Missouri Pacific Freight Transport Company operates daily schedules seven days a week from Wichita to Hoisington, generally paralleling Central's proposed line from Wichita to Hutchinson and serving Haven and Hutchinson as would Central. Missouri Pacific also has rail service between these points. A truck line from Hoisington west to Horace and rail line from Geneseo to Horace serves the same cities of McCracken, Brownell and Ransom as Golden Belt seeks to serve.

"15. 70.9 percent of the freight shipments handled by Missouri Pacific Freight Transport Company are 200 pounds or less.

"16. The Transcontinental Bus System, Inc., operates two schedules each way, 7 days a week, between Wichita and Hays via Great Bend, and one per day between Wichita and Great Bend. One of these serves Haven while two serve Halstead and Burrton. All of them serve Hutchinson, Nickerson, Sterling and Lyons. Another daily schedule is operated between Wichita and Dodge City, serving Halstead, Burrton and Hutchinson.

"17. Transcontinental also operates 7 schedules per day every day of the week between Wichita and Pratt, which serve Cunningham and Cairo as well.

"18. On all of its scheduled buses travelling the above routes, as above set out, Transcontinental transports express of not to exceed 200 pounds per

package, and generally 24 x 24 x 45 in dimensions. The revenue obtained from this source is vitally important to this company's bus operations and loss of the same would seriously affect its operations.

"19. No complaint for additional express service has been received by Transcontinental Bus System. It actively solicits express business and has room on its buses to adequately handle additional express.

"20. A total of 10 schedules per day are operated between Wichita and Hutchinson by the four truck and bus lines now transporting parcels and shipments of 200 pounds and less. Two of these schedules serve the intermediate city of Haven, and eight of them serve the intermediate cities of Halstead and Burrton. Departure times from Wichita are spaced from 9:15 A. M. to 6:30 P. M., and arrivals from 11:35 A. M. to 11:25 P. M.

"21. A total of 7 daily schedules are operated between Hutchinson and Lyons by the three lines that now are authorized to, and do, transport parcels and shipments of 200 pounds and less. These schedules all serve the intermediate cities of Nickerson and Sterling. Departure and arrival times from and at Hutchinson in both directions vary from 9:30 A. M. to 9:37 P. M.

"22. A total of 10 schedules are operated between Wichita and Pratt by the two companies who now operate on that route and who carry parcels and shipments of 200 pounds and less. Intermediate points between Kingman and Pratt are served thereby. Arrival and departure times at Wichita are spaced between 1:15 A. M. to 11:08 P. M.

"23. A total of 5 schedules per day are operated by Santa Fe Trailways alone between Kinsley and Dodge City, serving those cities and intermediate points.

"24. That no complaints relating to existing service or demands for additional schedules have been presented to the existing carriers by any of the firms whose officers or employees testified on behalf of the applicants.

"25. The existing facilities for the transportation of parcels or shipments of 200 pounds or less, particularly those of Transcontinental Bus and Peter Rabbit Freight, over the route sought by and granted to Central News Express are not being utilized by shippers to their full capacity, with many of the shippers, who testified, being unaware of all their schedules or times thereof or being indifferent thereto.

"26. There is no substantial, competent or material evidence of any need, convenience or necessity for additional transportation facilities over the routes sought by, and granted to, the Central News Express.

"27. That the service furnished by the existing transportation facilities over the routes and to the communities sought by, and described in the application of, the Central News Express, is reasonably adequate and sufficient.

"28. There is some evidence of a lack of convenient, sufficient service furnished by existing transportation agencies over the extension of the existing routes sought by Golden Belt Express, due chiefly, to the time of present schedules rather than lack of expedition in transport.

"29. That the existing common carriers now serving the areas and communities covered in the applications of both Golden Belt Express and Central News Express, would suffer from the diversion of traffic by applicants, and both their business and their service to the public would be adversely affected thereby.

"30. That the existing carriers operating over the routes sought both by the Central News Express and by the Golden Belt Express, were never given any opportunity to provide further or additional, convenient, efficient and sufficient service within a reasonable time over any of the routes or to any of the communities for which certificates were sought by the said applicants."

As conclusions of law the court held:

### "CONCLUSIONS OF LAW

"1. That the order entered by the Kansas Corporation Commission on July 22, 1955, extending the certificate of Golden Belt Express, Inc., is unreasonable and unlawful for the reason that existing public carriers operating over the routes sought by, and granted to, the applicant were not given a reasonable time to provide convenient, sufficient service, or further or additional service over said routes, in compliance with the provisions of G. S. 1949, 66-1,129.

"2. That the order of said Commission referred to in Conclusion 1 above should be set aside and vacated, and that judgment be entered in Case No. 8759 vacating and setting aside the order entered by the Commission on July 22, 1955, extending the certificate of Golden Belt Express, Inc.

"3. That the order of the Kansas Corporation Commission entered on July 22, 1955, extending the certificate of Central News Express, Inc., is unreasonable and unlawful in that it is not supported by substantial, competent evidence, and for the further and additional reason that even though the order were based on substantial, competent evidence the Commission did not comply with the provisions of G. S. 1949, 66-1,129 by giving existing public carriers reasonable time to provide any further service required to make the present service adequate.

"4. That the order of said Commission referred to in Conclusion 3 above should be set aside and vacated and that judgment be entered in Case No. 8760 vacating and setting aside the order of the Commission entered on July 22, 1955, extending the certificate of Central News Express, Inc."

Judgment was entered in harmony with the conclusions of law.

The commission's specifications of error are:

### "SPECIFICATIONS OF ERROR

"1. The District Court erroneously found that the existing carriers operating over the routes sought both by Central News Express, Inc., and Golden Belt Express, Inc., were never given any opportunity to provide further or additional, convenient, efficient and sufficient service within a reasonable time over any of the routes, or to any of the communities for which certificates were sought by the said applicants.

"2. The District Court erroneously held that the orders entered by the State Corporation Commission on July 22, 1955, are unreasonable and unlawful for the reason that existing public carriers operating over the routes sought by, and granted to, the applicants were not given a reasonable time to provide convenient, sufficient service, or further or additional service over said routes, in compliance with G. S. 1949, 66-1,129.

"3. The District Court erroneously interpreted and misconstrued the provisions of G. S. 1949, 66-1,129 by appling those provisions to the case before it."

The commission has not abstracted any of the evidence heard by it and reviewed by the trial court on appeal. We therefore proceed upon the theory that each and every finding of fact is supported by competent and substantial evidence. (*In re Estate of Fitzroy,* 172 Kan. 339, 240 P. 2d 163; *Franklin v. Kansas City Public Service Co.,* 175 Kan. 626, 628, 265 P. 2d 1031; *Osborne v. Fakes,* 178 Kan. 373, 376, 286 P. 2d 156.) In fact, during oral argument counsel for the commission conceded the detailed findings are so supported and made no objection concerning them.

This, therefore, disposes of the first specification of error.

The principal question in these appeals concerns the correctness of the trial court's application of G. S. 1949, 66-1,129, to the facts found—that is, whether its provisions are a limitation upon the granting of a certificate of convenience and necessity under G. S. 1949, 66-1,114.

Although lengthy, we consider it necessary to set out those two sections in full.

G. S. 1949, 66-1,114, reads:

"It shall be unlawful for any public motor carrier to operate as a carrier of intrastate commerce within this state without first having obtained from the corporation commission a certificate of convenience and necessity. The corporation commission, upon the filing of application for such certificate, shall fix a time and place for hearing thereon, which shall not be less than twenty nor more than thirty days after such filing. The corporation commission shall cause a copy of such application and notice of hearing thereon to be served at least ten days before the hearing upon an officer or owner of every common carrier that is operating or has applied for a certificate to operate in the territory proposed to be served by the applicant, and on the city clerk of every city into or through which said motor carrier may desire to operate; and any such common carrier or city is hereby declared to be an interested party to said proceedings and may offer testimony for or against the granting of such certificate, and any other interested person may offer testimony at such hearing. If the commission finds from the evidence that the proposed service or any part thereof will promote the public convenience and necessity, the commission shall issue the certificate; otherwise such certificate shall be denied. Before granting a certificate to a public motor carrier, the commission shall take into consideration other existing transportation facilities in the territory for which a certificate is sought, *and in case it appears from the evidence that the service furnished by existing transportation facilities is reasonably adequate, the commission shall not grant such certificate.*" (Our italics.)

G. S. 1949, 66-1,129, reads:

"The commission shall promulgate and publish in the official state paper, and mail to each holder of a certificate or license hereunder, such regulations as it may deem necessary to properly carry out the provisions and purposes of this act. The commission may at any time, for good cause, suspend, and, upon at least five days' notice to the grantee of any certificate and an opportunity to be heard, revoke or amend any certificate. *Upon the commission finding that any public carrier does not give convenient, efficient and sufficient service as ordered, such public carrier shall be given a reasonable time to provide such service before any existing certificate is revoked or a new certificate granted.* Any rules promulgated by the commission shall include: (*a*) Every vehicle unit shall be maintained in a safe and sanitary condition at all times. (*b*) Every operator of a motor vehicle used as a public carrier shall be at least twenty-one years of age; and every operator of other carriers to which this act applies shall be at least sixteen years of age; and all such operators shall be of good moral character and fully competent to operate the motor vehicle under his charge. (*c*) Hours of service for operators of all motor carriers to which this act applies shall be fixed by the commission. (*d*) Accidents arising from or in connection with the operation of carriers shall be reported to the commission in such detail and in such manner as the commission may require: *Provided,* That the failure to report any such accident within five days after the happening thereof shall be deemed willful refusal to obey and comply with a rule of the commission. (*e*) The commission shall require and every carrier shall have attached to each unit or vehicle such distinctive marking as shall be adopted by the commission." (Our italics.)

The commission contends that the two statutes, which are sections 7 and 22, respectively, of chapter 236, Laws of 1931, serve separate functions in the field of public-carrier law pertaining to the issuance of certificates of convenience and necessity; that they are separate and independent of each other, and that neither controls the other in its application. In other words, it is argued that the basis of the trial court's conclusion of law number 1 and the second portion of conclusion of law number 3, in which it was held the orders of the commission were unlawful and unreasonable because it had not given existing public carriers (appellees herein) a reasonable time in which to provide further or additional service over their routes under the italicized portion of 1,129, above, before granting the extensions to Golden Belt and Central News, is erroneous.

Because of the ultimate disposition being made of these appeals, discussion of the question is perhaps, in one sense, academic. Nevertheless, as the matter is of public and governmental concern, we think it should be answered.

The question really amounts to this: Where, under 1,114, a public carrier applies to the commission for a certificate of convenience and necessity, or, as here, for an extension of its existing certificate, does the italicized portion of 1,129, above quoted, require that the commission give to an existing public carrier a reasonable time in which to provide the service thus sought before it may grant the application? In other words, is the mentioned portion of 1,129 a *limitation* upon the authority of the commission to grant a certificate of convenience and necessity under 1,114?

In our opinion the question must be answered in the negative.

In *Pickwick Greyhound Lines v. Public Service Com.*, 132 Kan. 464, 295 Pac. 647, the court considered a similar question involving sections 4 and 8 of chapter 206 of the Laws of 1925. Section 4 of that act is substantially identical to 1,114, here involved, except that it does not contain the italicized portion of 1,114, above. Section 8 of the act there under consideration is substantially identical to 1,129, now before us.

It was held that the two sections must be construed so that each will have its sphere of operation; that section 4 authorizes the commission to grant certificates of convenience and necessity, and that section 8 concerns the character of service that is being rendered by a public carrier *after* it has been granted a certificate; that the finding required by section 4 is one of public convenience and necessity, while that required by section 8 is that a public carrier to whom a certificate has been granted does not give service in accordance with the order of the commission, and that the sections are not in conflict with each other, and neither controls the other.

The decision in that case was rendered several months prior to the effective date of 1,114 and 1,129, but the addition of the italicized portion in 1,114 is immaterial on the basic question involved.

The holding in the Pickwick case was approved in *Southern Kansas Stage Lines Co. v. Public Service Comm.*, 135 Kan. 657, 665, 11 P. 2d 985, which also dealt with the prior law.

The parties to the appeals before us refer to what was said, commencing on page 496 of the opinion in the case of *Rock Island Motor Transit Co. v. State Corporation Comm.*, 169 Kan. 498, 219 P. 2d 405, with respect to the application of 1,129, and from the first and third conclusions of law it is apparent the trial court interpreted the decision as meaning that 1,129 operates as a *limita-*

*tion* on the authority of the commission to grant a certificate under 1,114. We frankly concede that certain language contained in the opinion in that case is subject to the interpretation apparently given to it by the trial court. Reference to the facts and question there under consideration, however, discloses that the point was not decisive in the case, and our reference to 1,129 could very well, and should have been, omitted. Anything said in the Rock Island opinion tending to indicate that 1,129 is construed as being a limitation on the power of the commission authorized by 1,114, is hereby disapproved.

The sum and substance, then, of what has been said is this:

1,114 provides that it shall be unlawful for any public motor carrier to operate as a carrier of intrastate commerce without first having obtained from the commission a certificate of convenience and necessity. By its provisions the commission, after the filing of an application, must fix a time and place for a public hearing thereon not less than twenty nor more than thirty days after such filing, and must give notice to all interested parties mentioned in the statute so that they may be given the opportunity to appear in support or protest of the application. If, from the evidence submitted, it is found that public convenience and necessity will be promoted, the commission shall grant the application, but in so doing it must take into consideration other existing transportation facilities in the territory for which a certificate is sought, and in case the evidence discloses that the service furnished by existing transportation facilities is reasonably adequate the commission shall not grant such certificate. The finding required by this section is one of public convenience and necessity.

1,129, on the other hand, concerns the *regulatory* power and authority of the commission over a public carrier to whom a certificate *has already been granted,* and, so far as here pertinent, merely provides that upon a finding that such public carrier is *not* giving convenient, efficient and sufficient service, as ordered, it shall be given a reasonable time to provide such service before any existing certificate is revoked or a new certificate granted. The finding required by this section is that the public carrier to whom a certificate has been granted is not giving the service as ordered by its certificate.

It is true that under the provisions of 1,114 the commission must take into consideration the service furnished by existing transporta-

tion facilities, and that under 1,129 an existing carrier, if not providing service required by its certificate, is to be given a reasonable time in which to improve its service before its certificate may be revoked or a new one granted, and that to such extent it may be said the two sections "overlap," nevertheless, each deals with a separate field and is independent of the other.

Technically speaking, therefore, insofar as Golden Belt is concerned, the trial court was in error in holding in conclusion of law number 1 that the order of the commission was unlawful and unreasonable *because* existing public carriers (appellees herein) were not given a reasonable time to provide convenient, sufficient service, or further or additional service over their routes, in compliance with 1,129. For the same reason the second portion of conclusion of law number 3, relating to Central News, also was erroneous.

It does not follow, however, that the judgment itself is erroneous. The ultimate question is whether the judgment is correct, and it has been held many times that if a judgment is correct it will not be set aside merely because of erroneous reasoning in arriving at it. (*Saylor v. Crooker*, 97 Kan. 624 [syl. 4], 156 Pac. 737, Ann. Cas. 1918D 473; *Foster v. City of Augusta*, 174 Kan. 324 [syl. 4], 256 P. 2d 121; *Johnson v. Boeing Airplane Co.*, 175 Kan. 275, 283, 262 P. 2d 808; *Asendorf v. Common School District No. 102*, 175 Kan. 601, 609, 610, 266 P. 2d 309.)

With this rule in mind, we look to the judgment rendered which vacated and set aside, as being unlawful and unreasonable, the orders of the commission extending the certificates of convenience and necessity to Golden Belt and Central News.

With respect to Central News, the court, in findings 26 and 27, found that there was no substantial, competent or material evidence of any need, convenience or necessity for additional transportation facilities over the routes sought by and granted to Central News, and that the service furnished by existing transportation facilities over the routes and to the communities sought by Central News was reasonably adequate and sufficient. These findings are binding upon the commission, and support the judgment vacating and setting aside the order granting the extension to Central News.

With respect to Golden Belt, the court, in findings which are binding upon the commission, found that no complaints relating to existing service or demands for additional schedules had ever been made to existing carriers by any of the firms whose officers or em-

ployees testified on behalf of Golden Belt; that while there was some evidence of a lack of convenient, sufficient service furnished by existing carriers over the extension of the existing routes sought by Golden Belt, it was due, chiefly, to the time of present schedules rather than lack of expedition in transport, and that existing carriers serving the areas and communities covered in Golden Belt's application would suffer from the diversion of traffic by Golden Belt, and that their business and their service to the public would be adversely affected thereby. From these findings (24, 28 and 29), and others, it is clear the trial court was of the opinion the evidence established that the service being furnished by existing carriers was reasonably adequate, as contemplated by 1,114, in which event it thus was justified in setting aside the order of the commission granting the extension to Golden Belt. As to Golden Belt the findings support the judgment rendered.

From what has been said it follows that, even though in two of its conclusions of law the trial court placed an erroneous interpretation on 1,129, the judgment rendered was correct, and it is affirmed.