No. 46,563

Keith Armstrong, Jack Gray and James R. Martin, *Appellants,* v. City of Salina, Kansas, and Norris Olson [City Manager], *Appellees.*

(507 P. 2d 323)

Opinion filed March 3, 1973.

*Charles C. Shafer,* of Kansas City, Missouri, argued the cause, and *John E. Royston,* of Kansas City, was with him on the brief for the appellants.

*H. R. Kuhn,* of Wichita, argued the cause, and *L. O. Bengtson* and *James P. Mize,* both of Salina, were with him on the brief for the appellees.

The opinion of the court was delivered by

KAUL, J.: This is an action in mandamus instituted by the appellants, three fire fighters, who were formerly employees of the City of Salina. The petition consists of three counts. In count one appellant Gray alleged that defendants, City of Salina and city manager, Norris Olson, discharged him and required him to seek early retirement on or about October 16, 1970, all because of his membership and activity in Local No. 782, International Association of Fire Fighters, AFL-CIO, hereafter referred to as the union. Gray alleged that his discharge on these grounds was in violation of Article 15, Section 12, of the Kansas Constitution, commonly known as the right-to-work amendment. Gray prayed for an order of mandamus requiring defendants to reinstate him to his former position in the Salina Fire Department with all back pay due since the date of his discharge and for other incidental relief.

In counts two and three of the petition, appellants Armstrong and Martin, respectively alleged that they each had been discharged in January 1971, all because of membership and activity in the union. Armstrong and Martin prayed for relief in the same form as that sought by Gray.

Defendants answered generally denying violation of the right-to-work amendment. With the issues thus joined the case came on for trial.

At the close of plaintiffs' case, defendants moved for dismissal upon the grounds that plaintiffs' evidence wholly failed to prove any alleged ground for relief. The trial court sustained defendants' motion. The proceedings are not reproduced in the record, however, the journal entry reflects the following:

"Now on this 9th day of June, 1971, parties appearing as before, the court finds that defendants' motion to dismiss should be sustained for the reason and upon the grounds that the plaintiffs' evidence fails to prove that plaintiffs, or any of them, were discharged from former positions in the Fire Department of the City of Salina in violation of the Kansas Right-to-Work Amendment, *Kansas Constitution, Article* XV, § 12, and that plaintiffs should be assessed with the costs of this action."

Thereupon plaintiffs perfected this appeal asserting the trial court erred on several grounds in its disposition of the case.

Evidence adduced by plaintiffs at the trial consisted of the testimony of the fire chief, several officers and members of the fire department, the chief of police, and various other city officials.

Appellant Gray was given the choice of retirement or dismissal on October 16, 1970. He elected to retire and has been receiving retirement benefits since that date. City officials and the fire chief testified that Gray was given the choice of retirement or dismissal because of his incompatibility with the fire department; his inability to get along with his superiors or with his men; and the poor morale on his shift.

Appellant Martin, a lieutenant with the fire department, was discharged on January 20, 1971. In October 1970 he told fire chief Lacy about some talk around his station of possible sabotage of city owned equipment. Chief Lacy testified that he gave little thought to the matter until January 18, 1971, when the tires on a city owned automobile driven by John J. Woody, chief of police, were slashed. The following morning Lacy asked Martin to tell the police the names of those who had earlier threatened or talked about sabotaging the property. Martin refused to give the names. He was promptly discharged as of January 20, 1971, for insubordination in refusing to cooperate with city officials in the sabotage investigation.

Appellant Armstrong, the purported president of the fire fighters union, was discharged on January 13, 1971. He had been suspended in 1970 for a brief period for poor attitude toward his job and for disregarding established departmental procedure. The reasons given for his discharge were failure to follow "chain of command," insubordination, a "demanding" approach to his superiors, and particularly because of a letter written by him described as threatening "Action."

Neither Armstrong nor Gray testified at the trial. Martin's only testimony was to deny knowledge of the names of those threatening sabotage to city vehicles.

Chief Lacy testified that he assumed Martin was a union member and that he knew Gray had been a union member, but did not know Gray's status in this respect at the time of his forced retirement. There is no direct evidence in the record showing that Gray or Martin were union members. The record is entirely void of any evidence that Gray engaged in any union activities which might have been the actual basis for his dismissal. Concerning Martin there is only a vague reference to some involvement he may have had nearly a year prior to his discharge in connection with the hiring of an attorney by the union. There is no direct evidence in

the record that the basis for Martin's dismissal was anything other than his refusal to cooperate in the police investigation.

On appeal appellants specify thirteen points of error. However, many of them cannot be reviewed by this court because of the inadequacy of the record relating thereto.

Appellants' first contention is error by the trial court in refusing to allow them to amend their petition to conform to proof under K. S. A. 1972 Supp. 60-215. Presumably, appellants' motion was lodged at the conclusion of the evidence. However, the record does not disclose the motion, the objections of the appellees or the rulings of the trial court in the disposition thereof. The record being silent as to any such proceedings appellate review is impossible. This court has stated many times that it is incumbent upon the party appealing to bring up a complete record of all matters upon which review is sought. (*Curby v. Ulysses Irrigation Pipe Co., Inc.*, 204 Kan. 456, 464 P. 2d 245; and *Robles v. Central Surety & Insurance Corporation*, 188 Kan. 506, 363 P. 2d 427.)

In passing, we observe in this connection that appellants alleged in their petition as a sole ground for relief that their dismissals were in violation of the right-to-work amendment (Article 15, Section 12, of the Kansas Constitution), and they presented their case to the trial court on that basis. Any issue pertaining to the question whether appellants' dismissal must have been for good cause was not injected until their motion to amend was made. The matter of permitting or refusing an amendment to the pleadings at this juncture of the litigation was wholly within the trial court's discretion and in the absence of a clear abuse thereof the order of the trial court will not be disturbed. (*Hoover Equipment Co. v. Smith*, 198 Kan. 127, 422 P. 2d 914; and *Finn, Administratrix v. Veatch*, 195 Kan. 13, 403 P. 2d 189.)

Appellants' points two, three and four concern the trial court's rulings in excluding or admitting certain evidence. The record fails to disclose the circumstances surrounding the objections lodged by appellants. Since the essential portions of the trial transcript were not designated and included in the record, we are unable to review the matters complained of on appeal.

Points five and six concern appellants' claim that their evidence established as a matter of law and fact that they had been dismissed or forced into retirement without just cause. The points raised here are eliminated by reason of our disposition of appellants' first point.

As we have previously indicated, the appellants' presentation of their case was on the issue that they had been discharged in violation of the right-to-work amendment as pleaded in their petition. They are not entitled to expand the case to include an entirely new issue of discharge or forced retirement without just cause. This question was not determined by the trial court and is not before us on appellate review.

In points seven and eight appellants raise the critical issues to be considered in this appeal. They claim that their evidence established as a matter of law and fact that they were discharged or forced into retirement because of their union membership and/or union activities in violation of the right-to-work amendment; and further that the trial court erred as a matter of law in holding that they had not proved their entitlement to writs [orders] of mandamus requiring each of them to be restored to their former employment.

The right-to-work amendment, Article 15, Section 12, of the Kansas Constitution, reads:

"No person shall be denied the opportunity to obtain or retain employment because of membership or nonmembership in any labor organization, nor shall the state or any subdivision thereof, or any individual, corporation, or any kind of association enter into any agreement, written or oral, which excludes any person from employment or continuation of employment because of membership or nonmembership in any labor organization."

Appellees concede that the power or authority of a city manager in the matter of dismissing a subordinate city employee is now limited by the provisions of the right-to-work amendment. Appellees contend, however, that appellants failed to sustain the burden of showing that they were discharged either by reason of union membership or union activities. Therefore, appellees further claim it is unnecessary in this case to determine whether the amendment proscribes dismissal for union activities as well as for union membership since the evidence failed to support appellants' position on either premise. We are inclined to agree with appellees.

The record suggests considerable conflict between the fire fighters and the city administration over a period of several years. Although the dismissals were actually made by city manager Olson, his brief testimony—as reproduced in the record—is not addressed to the reasons for the discharges of appellants. There was some evidence which hints at antiunion animus on the part of some of the top-level city officials. However, the evidence disclosed that the union had been in existence for some twenty-five years and that most of the

fire department administrators had previously been union members. There is no direct evidence of appellant Gray's union membership and no evidence whatsoever as to union activity on his part. A memo prepared by chief Lacy at the time of Gray's dismissal was received in evidence, it included these statements: "Gray said I haven't been going to Union meetings. I said I don't care about Union Meetings." The reasons given for Gray's forced retirement were not refuted by him.

The evidence of union membership and activity on the part of appellant Martin was scanty and any conclusion to that effect would necessarily have to be made by inference. The stated reason for Martin's dismissal was because of what his superiors determined to be a refusal to cooperate in any investigation of vandalism of city vehicles. There is actually no evidence that he was dismissed for any other reason.

The trial court's dismissal of the action as to Gray and Martin is supported by the evidence and must be upheld.

The trial court's ruling with respect to appellant Armstrong must be examined in a somewhat different frame of reference. The evidence clearly reflects that he was president of the union and there was testimony concerning several complaints about letters he wrote as union president urging action with regard to vacations and time schedules. On February 24, 1970, Armstrong was suspended for reasons stated as poor attitude and disregard of established administrative policies. While he was suspended, Armstrong appeared before the city commission. The upshot of that confrontation was that the city director of safety urged Armstrong's immediate dismissal for insubordination; however, this recommendation was not acted upon. In the fall of 1970 the city commission commenced a three-month investigation of the fire department and interviewed every administrator and fire fighter in the department. On January 6, 1971, Armstrong wrote a letter to chief Lacy on union stationery with his signature appearing as president of the union. Throughout the testimony this letter is described and referred to as the "Action" letter. In the letter Armstrong informed the chief that the executive board of the union had been directed by the membership to meet with the chief prior to January 11, 1971. These further statements were contained in the letter:

"We wish to discuss your action toward certain union members, as to the merit raises, intimidations, and firing. Two other items for action are vacations, and the western show.

"The membership of local 782 wants you to know that if you are not willing to meet, and take action, *ACTION* will be taken."

Chief Lacy passed Armstrong's letter on to the city commissioners who called Armstrong in for a conference. At the conference Armstrong was questioned by the commissioners as to whether he wrote the letter in his representative capacity as president of the union or as an individual. Commissioner Ashton testified that Armstrong was asked how many members voted on the letter but that Armstrong refused to answer. Ashton testified that the commission, after examining the letter and further interviewing Armstrong, concluded that the letter was nothing more than harassment on the part of Armstrong, individually, to upset the commissioners' findings. The findings referred to were those made after an evaluation of the three-month investigation. Ashton testified the "Action" letter was the thing that influenced him to sign the recommendation for Armstrong's dismissal but that the recommendation of dismissal by the city commission was in no way influenced by Armstrong's union membership or any activity on his part in connection therewith.

Mayor Caldwell agreed with Ashton's version of the commission meeting with Armstrong. The mayor testified that the city commission was not antiunion.

As we have previously noted, Armstrong did not testify. Thus, there is no evidence in the record, other than what can be inferred from the "Action" letter itself, that Armstrong was acting in a representative capacity. Armstrong did not choose to controvert the statements of Ashton and Caldwell, that their conclusions after the interview were that Armstrong wrote the letter on his own, rather than in a representative capacity for the union. Failure of a party to an action to throw light upon an issue peculiarly within his own knowledge or reach, raises a presumption that the concealed information is unfavorable to him. The presumption, of course, is open to explanation. (*Londerholm v. Unified School District*, 199 Kan. 312, 430 P. 2d 188; *Blackburn v. Colvin*, 191 Kan. 239, 380 P. 2d 432; *In re Estate of Grisell*, 176 Kan. 209, 270 P. 2d 285; and *Donley v. Amerada Petroleum Corp.*, 152 Kan. 518, 106 P. 2d 652.)

The controlling question in this appeal—whether appellants' dismissals were in violation of the right-to-work amendment—is essentially one of fact. The case was tried to the court without a jury, thus the court's consideration of appellees' motion to dismiss was

governed by the provisions of K. S. A. 1972 Supp. 60-241 (*b*) pertaining to involuntary dismissal. Unlike the parallel situation of a motion for directed verdict in a jury trial under K. S. A. 60-250 (*a*) the trial court, in considering a motion for involuntary dismissal under 60-241 (*b*) may weigh and evaluate the evidence in the same manner as if it were adjudicating the case on the merits. (*Burks v. Whalen,* 208 Kan. 222, 491 P. 2d 940; *In re Estate of Ewers,* 206 Kan. 623, 481 P. 2d 970; *Wiley v. Board of Education,* 205 Kan. 585, 470 P. 2d 792; *Waterstradt v. Board of Commissioners,* 203 Kan. 317, 454 P. 2d 445; and *Mackey-Woodard, Inc. v. Citizens State Bank,* 197 Kan. 536, 419 P. 2d 847.)

The application of the above rule, for all practical purposes, disposes of appellants' chief contention on appeal. Even though, as appellants claim, there was some evidence which might support their theories; the trial court had the authority and duty to weigh and evaluate the evidence. Since there is substantial competent evidence to support the trial court's findings they cannot be disturbed on appeal. To weigh the evidence in the light of any conflict or inconsistency is beyond our scope of review, which is simply to ascertain whether the trial court's findings are supported by substantial competent evidence; and in making this determination we are required to consider the evidence in the light most favorable to the party who prevailed in the court below. (*Burks v. Whalen,* supra; *Wiley v. Board of Education,* supra; and *Riedel v. Gage Plumbing & Heating Co.,* 202 Kan. 538, 449 P. 2d 521.)

In view of what has been said, it obviously follows that appellants were not entitled to orders in mandamus. The remedy of mandamus is available only to compel the performance of a clearly defined duty. Its purpose is to require one to whom the order is issued to perform some act which the law specifically enjoins as a duty resulting from his office, trust or position; the remedy may not be invoked to control discretion nor does it lie to enforce a right which is in substantial dispute. Resort to the remedy may be had only when the party invoking it is clearly entitled to the order which he seeks. (*Lauber v. Firemen's Relief Assn. of Salina,* 195 Kan. 126, 402 P. 2d 817; and *Gray v. Jenkins,* 183 Kan. 251, 326 P. 2d 319.)

Appellants contend the appellees waived their right to a motion for involuntary dismissal under 60-241 (*b*) by interrogating commissioner Ashton as their witness during appellants' presentation of

their evidence. Appellants cite no authority in support of their position and we know of none. K. S. A. 1972 Supp. 60-241 (*b*) simply authorizes a motion by a defendant for involuntary dismissal "after the plaintiff, . . . had completed the presentation of his evidence," without waiving his right to offer evidence in the event the motion is not granted.

As their tenth specification of error appellants claim the trial court erred in failing to hold that "union activities" of employees were protected by the right-to-work amendment. This point has been adequately covered in our consideration of points seven and eight, wherein it was pointed out that the record is silent as to any involvement in "union activities," on the part of Gray and Martin. The trial court's ruling with respect to the question whether Armstrong was acting in a representative capacity cannot be disturbed for the reasons previously stated.

The evidence in this case discloses that the union had existed in the fire department for more than twenty years. Many of the fire department administrative officials were former members of the union. There is no direct evidence that either fire department administrators or other city officials are—or have been—antiunion.

Other points raised by appellants concern rulings of the trial court on evidence. We have carefully examined the contentions presented and find them to be without merit.

The judgment is affirmed.