No. 38,794

ROBERT I. DENNIS, et al., *Plaintiffs,* v. THE STATE BOARD OF BARBER EXAMINERS, et al., *Defendants.*

(257 P. 2d 940)

Opinion filed June 6, 1953.

*Frederick Hall* and *Donald C. Smith,* both of Dodge City, were on the briefs for the plaintiffs.

*Donald Hickman,* of Arkansas City, argued the cause, and *Harold R. Fatzer,* attorney general, and *Paul E. Wilson,* assistant attorney general, and *Kirke W. Dale,* of Arkansas City, were with him on the briefs for the defendants.

The opinion of the court was delivered by

PARKER, J.: This is an original proceeding in mandamus brought by private individuals to compel the duly appointed members of the State Board of Barber Examiners to take official action. Upon application an alternative writ issued to the defendants who, in due time, filed a motion to quash such writ. The case was presented to this court on issues thus joined.

The theory on which plaintiffs claim the right to maintain the action is set forth in the opening paragraph of their brief which reads:

"This is an action in mandamus brought by seventy-five percent of the practicing barbers in the 31st Judicial District. In it they ask a writ of man-

damus to compel the State Board of Barber Examiners to make personal investigations and to hold public hearings, as provided in G. S. 1949, 65-1830, to ascertain what price schedule for barber work is just and under varying conditions will best protect the public health and safety by affording a sufficient minimum price for all barber work, to enable the barbershops in the area to furnish modern and healthful service, using modern appliances and equipment, so as to minimize danger to public health incident to such service."

G. S. 1949, 65-1830, on which the plaintiffs rely for relief, is one of the sections of chapter 298, Laws of 1941, now G. S. 1949, 65-1823 to 1834, incl., enacted by the legislature for the purpose of regulating and controlling the barbershop business. For purposes essential to the disposition of the cause it may be said:

That the title of the Act reads:

"AN ACT to regulate and control the barbershop business in the state of Kansas; conferring upon the state board of barber examiners powers, duties, authority and jurisdiction with relation thereto, defining such powers, duties, authority and jurisdiction; authorizing said board to approve price schedules and to make orders fixing minimum prices for barber services, and providing for judicial review of such acts of said board; and providing penalties for violations of this act."

That section 11 thereof (G. S. 1949, 65-1833) states:

"The legislature hereby declares that this act is necessary to protect the public welfare, public health and public safety and that this act is enacted in the exercise of the police power of the state."

And that the first subsection of section 8 of such Act (G. S. 1949, 65-1830), which is followed by other subsections outlining the procedure to be followed by the barber board upon initiation of the action therein mentioned, provides:

"The board shall have the power to approve minimum price schedules of the various items of barber services to be charged in any given judicial district on its own initiative or if a petition signed by at least seventy-five percent of the barbers practicing and operating in such district who hold valid, existing licenses to practice barbering in the state of Kansas shall be presented to the board requesting a minimum price schedule to be approved for any such judicial district. After having ascertained by personal investigation proof as to what price schedule is just, and under varying conditions, will best protect the public health and safety by affording a sufficient minimum price for all barber work, to enable the barbershops in such area to furnish modern and healthful service, using modern appliances and equipment so as to minimize danger to public health and safety incident to such service, the board may approve a price schedule for such area."

The paramount issue raised by defendants' motion to quash the alternative writ, which we pause to note must be treated as tanta-

mount to a demurrer under our decisions (See Hatcher's Kansas Digest [Rev. Ed], Mandamus, § 121, West's Kansas Digest, Mandamus, § 162), is that the petition shows upon its fact that the plaintiffs have no legal capacity to maintain the action. We are convinced it appears from plaintiffs' own theory, as well as from the allegations of their petition, to which we shall presently refer, that this ground of the motion to quash has merit and must be upheld.

The rule that private citizens without interest or rights distinct from those of other citizens cannot maintain an action in mandamus to compel public officials to perform their duty is well-established in this jurisdiction.

Long ago in *Bobbett v. State ex rel. Dresher*, 10 Kan. 9, we held:

"*Mandamus* will not lie at the instance of a private citizen to compel the performance of a purely public duty.

"Such a suit must be brought in the name of the state, and the county attorney and the attorney general are the officers authorized to use the name of the state in legal proceedings to enforce the performance of public duties.

"Where a private citizen sues out a *mandamus* he must show an interest specific and peculiar in himself, and not one that he shares with the community in general." (Syl. ¶¶ 1, 2 and 3.)

The principles announced in the foregoing decisions, although often times differently stated, have been repeatedly and steadfastly adhered to by this court down to and including our most recent decisions. See, e. g., *Gormley v. School Board*, 110 Kan. 600, 204 Pac. 741; *Weigand v. City of Wichita*, 111 Kan. 455, 207 Pac. 651; *Collingwood v. Schmidt*, 125 Kan. 81, 262 Pac. 556; *Bobbitt v. State Highway Comm.*, 138 Kan. 487, 26 P. 2d 1115; *Citizens Utilities Co. v. City of Goodland*, 146 Kan. 172, 175, 69 P. 2d 318; *Bradley v. Cleaver*, 150 Kan. 699, 95 P. 2d 295.

Numerous other Kansas decisions to the same effect can be found by resort to Hatcher's Kansas Digest [Rev. Ed], Mandamus, §§ 109 to 112, incl., and West's Kansas Digest, Mandamus, §§ 22, 23, 145, 146.

*Bobbitt v. State Highway Comm.*, supra, is entitled to special consideration because it recogizes that the foregoing principles have application to injunction as well as mandamus proceedings. See page 489 of its opinion which reads:

"To the same effect is *Home Riverside Coal Mines Co. v. McAuliffe*, 126 Kan. 347, 267 Pac. 996, where the court said:

"'Early in the history of this state it was determined that '. . . for wrongs against the public, whether actually committed or only apprehended,

the remedy, whether civil or criminal, is by a prosecution instituted by the state in its political character . . ." (*Craft v. Jackson Co.*, 5 Kan. 518, 521; and see *Clark v. George*, 118 Kan. 667, 669, 236 Pac. 543.) This principle applies not only in injunction, but in mandamus (*Bobbett v. State, ex rel. Dresher*, 10 Kan. 9; *Collingwood v. Schmidt*, 125 Kan. 81, 262 Pac. 556) and other forms of action, many examples of which are found in our reports.' "

For more recent decisions, dealing with injunction proceedings but nevertheless adhering to the same principles, see *Dunn v. Morton County Comm'rs*, 162 Kan. 449, 177 P. 2d 207; *Haines v. Rural High School Dist. No. 3*, 171 Kan. 271, 232 P. 2d 437; and the many decisions, relating to both injunction and mandamus proceedings, cited in each of such opinions.

*Collingwood v. Schmidt*, supra, warrants particular attention because of a contention advanced by plaintiffs in substance to the effect that they have special interests in the relief sought beyond that of the public in general because they are signatories to the petition recognized by the statute (65-1830, *supra*) on which they rely. In that case the plaintiff, an individual citizen, voter, taxpayer and wheat grower of Stanton County brought an original proceeding in mandamus against the members of the board of county commissioners to compel them to put the township herd law into force and effect in certain townships of the county and to otherwise conform to the statute (R. S. 1923, 47-101, *et seq.*, now G. S. 1949, 47-101, *et seq.*) in accord with the prayer of petitions, alleged to have been signed by the requisite number of qualified electors, including the plaintiff, which had been presented to the defendants. Plaintiff commenced the action after the board had failed to act on such petitions on the theory his interest therein was of such nature he could maintain it in his individual capacity. There—as here—the defendants challenged his right to do so. This court in holding the point was well taken and in dismissing the action said:

". . . Such an action should be brought in the name of the state on the relation of the attorney-general or the county attorney. No question of taxes is involved here. Plaintiff is one of many wheat growers who have sown wheat in the townships in question. His interest in the question sought to be determined is no greater than that of other wheat growers in the townships and collectively such interest of wheat growers is no greater than that of raisers of live stock. The duty sought to be compelled is a public duty in that it affects the public, in those townships, and is to be performed by public officers in their official capacity. The plaintiff has no interests to be protected or rights to be enforced that are so personal to him, as distinct from others, as to authorize him to maintain this action." (p. 82.)

Nothing would be gained by laboring the allegations of the petition in the case at bar. It suffices to say that pleading shows upon its face that the plaintiffs are seeking to compel the defendants to proceed to perform certain alleged public duties under a statute enacted for the protection of the public welfare, public health, and public safety in the exercise of the police power of the state, and that nowhere in such pleading does it appear that they have any interest in the subject matter in litigation different than that of the public generally. The fact they identify themselves in the petition as barbers in no way distinguishes them from other citizens in attempting to compel the defendants to comply with what they deem to be the requirements of a statute enacted for the purposes heretofore indicated. Thus, upon application of the rule announced in the decisions to which we have heretofore referred, it becomes clear that plaintiffs lack legal capacity to bring the action, that the motion to quash should be sustained upon such premise, and that the case must be dismissed without giving consideration to other grounds of such motion, touching the merits of the cause, which can only be given proper consideration in a proceeding brought by a party who has the right to maintain it. ·

It is so ordered.

SMITH, J., not participating.