No. 84,545

KANSAS BAR ASSOCIATION, JACK R. EULER, and JOEL R. EULER, *Petitioners,* v. THE JUDGES OF THE THIRD JUDICIAL DISTRICT, viz., HON. MARLA J. LUCKERT, CHIEF JUDGE, *et al.,* *Respondents.*

(14 P.3d 1154)

Opinion filed December 15, 2000.

*Arthur E. Palmer,* of Goodell Stratton Edmonds & Palmer LLP, of Topeka, argued the cause, and *Steve S. Schwarm,* of the same firm, was on the brief for petitioners.

*M.J. Willoughby,* assistant attorney general, argued the cause, and *Carla J. Stovall,* attorney general, was on the brief for respondents.

*Thomas D.* Haney, of Fairchild, Haney & Buck, P.A., of Topeka, was on the *amicus curiae* brief for the Kansas Bankers Association and the Kansas Chamber of Commerce and Industry, Inc.

The opinion of the court was delivered by

LARSON, J.: The Kansas Bar Association (KBA) and Jack and Joel Euler (the Eulers) petitioned this court for a writ of mandamus asking for two things: (1) a declaration that K.S.A. 1999 Supp. 61-2707(a) is unconstitutional; and (2) an order directing the Judges of the Third Judicial District (Judges) to prevent those who are not

licensed attorneys from representing any party in a small claims proceeding.

The Judges filed a motion to dismiss. If neither the KBA nor the Eulers have standing to seek the remedy of mandamus or there is no justiciable case or controversy then the motion to dismiss must be granted.

The statute in issue is a portion of the Small Claims Procedure Act, K.S.A. 61-2701 *et seq.*, which was first enacted in 1973 to foster simplicity of pleading and provide a forum for the speedy trial of small claims. K.S.A. 61-2705; K.S.A. 61-2712; see L. 1973, ch. 239. The Act is limited to recovery of money or personal property valued at $1,800 or less. K.S.A. 1999 Supp. 61-2703(a).

The petitioners' contentions relate directly to K.S.A. 61-2707(a), which prior to amendment in 1999, stated: "The trial of all actions shall be by the court, and no party in such action shall be represented by an attorney prior to judgment." This language appeared to conflict with the common-law rule that corporations could appear in court only by attorneys. An Attorney General's Opinion suggested the small claims statute abrogated the common-law rule and allowed corporations to appear in small claims court by a non-attorney agent. Att'y Gen. Op. 95-100.

Reflecting this sentiment, the statute was amended in 1999 by Senate Bill 97 as follows:

"The trial of all actions shall be ~~by~~ *to* the court, and *except as provided in K.S.A. 61-2714, and amendments thereto,* no party in any such action shall be represented by an attorney prior to judgment. *A party may appear by a full-time employee or officer or any person in a representative capacity so long as such person is not an attorney.*" L. 1999, ch. 145, § 2.

See K.S.A. 1999 Supp. 61-2707(a).

The KBA and the Eulers argue that the small claims statutes as amended in 1999 are unconstitutional because they allow nonlawyers to represent parties in small claims court, thus fostering the unauthorized practice of law and infringing on the right of the judicial branch to regulate the practice of law. This infringement, according to the KBA and the Eulers, violates the doctrine of separation of powers.

We first consider the Judges' contention that petitioners do not have standing to seek mandamus because there is no justiciable case or controversy, rendering the petition nothing more than a request for an advisory opinion.

K.S.A. 60-801 states:

"Mandamus is a proceeding to compel some inferior court, tribunal, board, or some corporation or person to perform a specified duty, which duty results from the office, trust, or official station of the party to whom the order is directed, or from operation of law."

We further consider these rules regarding requests for writs of mandamus.

"Mandamus may not be invoked to control discretion. Mandamus does not enforce a right that is in substantial dispute. A party must be clearly entitled to the order sought before mandamus is proper." *Link, Inc. v. City of Hays,* 268 Kan. 372, 375, 997 P.2d 697 (2000). "Where an order of the trial court denies a litigant a right or privilege which exists as a matter of law, and there is no remedy by appeal, mandamus may be invoked." *State ex rel. Stephan v. O'Keefe,* 235 Kan. 1022, 1025, 686 P.2d 171 (1984).

" 'While mandamus will not ordinarily lie at the instance of a private citizen to compel the performance of a public duty, it has been held where an individual shows an injury or interest specific and peculiar to himself, and not one that he shares with the community in general, the remedy of mandamus and the other extraordinary remedies are available.' " *Stephens v. Van Arsdale,* 227 Kan. 676, 683, 608 P.2d 972 (1980).

"Whether or not a private individual has brought himself within the narrow limits of the well-established rule must be determined from the particular facts of each individual case." *Mobil Oil Corporation v. McHenry,* 200 Kan. 211, 243, 436 P.2d 982 (1968).

The Judges urge that the petitioners have failed to show an injury or interest specific and peculiar to themselves.

The petition states that the KBA brings this action "on behalf of itself and as a representative of its members who are admitted to the bar of this Court." Further, the petition states that Jack and Joel Euler "are members of the bar of this Court in good standing who are in the private practice of law in Northeastern Kansas," and

"bring the action on behalf of themselves and all other practicing attorneys in Kansas to prevent the unauthorized practice of law."

The petition states:

"The Plaintiffs allege that L. Kan. 1999, ch. 145, § 2 ['the statute'] permits the unauthorized practice of law. The statute is unconstitutional legislation which injures the public and the practice of law by the individual Plaintiffs and the attorneys they represent by permitting unauthorized competition with licensed members of the bar by persons not subject to the rules of this Court for the discipline of attorneys to act as attorneys in small claims proceedings."

The petition does not precisely state the nature of the injury claimed by the KBA and the Eulers. The petitioners allude to injury to the public and practicing lawyers stemming from the mere possibility of nonlicensed persons representing others in small claims court and the potential for competition between unlicenced individuals and licensed attorneys for small claims business. The KBA notes that it is consistent with its mission to protect litigants from incompetent representation, and more specifically, to protect non-law-trained citizens from the possibility of facing more experienced professional bill collectors or paralegals representing opposing parties in small claims court. The petitioners also suggest that the citizens of Kansas have been injured by the legislature's passage of an unconstitutional statute and its intrusion on the judicial branch's regulation of the practice of law.

The question becomes whether these alleged injuries confer standing upon the KBA and the Eulers. This court has considered the question of standing in the context of original actions in a number of cases.

In *Dennis v. State Board of Barber Examiners,* 174 Kan. 561, 257 P.2d 940 (1953), a group of barbers brought a petition for writ of mandamus asking this court to compel the State Board of Barber Examiners to investigate and hold hearings regarding a price schedule for barber work in order to protect public health and safety.

This court considered the threshold matter of whether petitioners had standing to bring the action. We held they did not and rejected the petition without reaching its merits, stating:

"Nothing would be gained by laboring the allegations of the petition in the case at bar. It suffices to say that pleading shows upon its face that the plaintiffs are seeking to compel the defendants to proceed to perform certain alleged public duties under a statute enacted for the protection of the public welfare, public health, and public safety in the exercise of the police power of the state, and that nowhere in such pleading does it appear that they have any interest in the subject matter in litigation different than that of the public generally. The fact they identify themselves in the petition as barbers in no way distinguishes them from other citizens in attempting to compel the defendants to comply with what they deem to be the requirements of a statute enacted for the purposes heretofore indicated." 174 Kan. at 565.

We followed *Dennis* in *Rowlands v. State,* 187 Kan. 174, 354 P.2d 674 (1960). Rowlands owned a bookstore in Lawrence. A university-run bookstore opened in the Memorial Union on campus. Rowlands brought an action in district court in the nature of quo warranto, arguing that the State's operation of the bookstore violated the constitutional prohibition against the State "carrying on any work of internal improvement." The district court dismissed the petition.

Our holding considered as a threshold matter whether Rowlands had the capacity to bring the action. Rowlands alleged his specific injury was being forced to compete with a State-run bookstore. We held:

"The fact that the plaintiff identifies himself as a college bookstore merchant in no way distinguishes him from other citizens who may have an interest in the question. He classes himself with 'other businesses in Lawrence, Kansas.' Applying the rule to which this court has long adhered, it is clear that the plaintiff has no legal capacity to bring this action, and the motions to dismiss were properly sustained." 187 Kan. at 179.

The Judges point to *Topeka Bldg. & Construction Trades Council v. Leahy,* 187 Kan. 112, 353 P.2d 641 (1960). There, an unincorporated trade association sought a writ of mandamus from the district court ordering the State and a construction company with which it had contracted to pay project laborers statutory per diem wages. The district court denied relief.

We affirmed, noting that not one of the individual members of the labor unions which made up the trade council was an employee of the respondent construction company. This court concluded that

petitioners had no special interest in the company's public works contract with the State apart from that of the general public, and that "[o]rdinarily, such a proceeding is to be brought by the state on relation of the attorney general or the county attorney." 187 Kan. at 114.

In *Bodine v. Osage County Rural Water Dist. No. 7,* 263 Kan. 418, 949 P.2d 1104 (1997), Bodine sought a writ of mandamus in district court directing the rural water district of which he was a rate paying member to pay no more than the contract rates for water purchased from a municipality. The district court granted summary judgment against Bodine. On appeal, Bodine claimed he and all other district members suffered the same injury. He did not show an injury specific or peculiar to himself, separate from one shared with the community in general. This court held, in part, that Bodine did not have standing to seek the remedy of mandamus. 263 Kan. at 430-31.

Conversely, in *Stephens v. Van Arsdale,* 227 Kan. 676, a newspaper reporter and his employer filed a petition for writ of mandamus asking us to compel the district court clerk to allow him access to certain court files otherwise closed by statute. The reporter and the newspaper claimed to have standing individually and on behalf of the citizens of Kansas. We agreed in part, stating:

"Have plaintiffs shown some injury or interest specific and peculiar to themselves and not one that they share with the community in general? We conclude the plaintiffs have shown such injury and interest. They collect and sell news to their customers, the citizens of Kansas. The denial by the defendant to these plaintiffs of access to official court records impairs their ability to carry on their business, the collection and dissemination of information. The plaintiffs have demonstrated that they have the requisite standing to maintain this action individually." 227 Kan. at 683.

The KBA and the Eulers rely heavily on *Depew v. Wichita Retail Credit Ass'n,* 141 Kan. 481, 42 P.2d 214 (1935), and suggested at oral argument that the Eulers were added as petitioners to bring the KBA within the umbrella of this decision. There, a group of licensed attorneys asked a district court to stop employees of a corporation from conducting the unauthorized practice of law. The district court held the petitioners had standing to seek relief in the

nature of injunction and injunction was a proper remedy. The respondents appealed.

In affirming, we held that attorneys have

"a special privilege, franchise and duty as officers of the court to protect the legal profession, the courts and the administration of justice generally. And it would seem to be well within such special franchise and privilege to protect not only themselves and others of their profession, but the courts of which they are officers against the illegal and unprofessional conduct of others." 141 Kan. at 486.

Three members of the court in a concurring opinion approved of the court's treatment of the relief sought as injunctive; however, they expressed discomfort about the nature of the proceedings as follows:

"[I]n essence and substance this is not an action at all. Under the fiction and form of an action between adverse parties, it is a special proceeding relating to the subject of the unlawful practice of law." 141 Kan. at 488.

Justice Smith dissented, noting:

"This action was not brought under the theory spoken of in the specially concurring opinion. It was clearly brought by the plaintiffs to obtain relief from a situation that was proving costly to them in their practice. The allegations of the petition show that.

. . . .

". . . My view of the matter is that a question such as is presented in this case should be litigated in the regular way, that is, in an action brought in the name of the state, on the relation of the county attorney or attorney-general." 141 Kan. at 488-89.

The Judges distinguish the result in *Depew* on the basis that: (1) it involved a petition for injunction; (2) the allegations in the petition were more specific and based on a concrete factual scenario; (3) it was not an original action filed in this court; and (4) there was no facial challenge to a statute. The KBA and the Eulers admit these distinctions exist but urge that they are not important.

*Leahy, Bodine, Rowlands,* and *Dennis* suggest that neither the KBA nor the Eulers have shown an injury or interest specific and peculiar to themselves. Sweeping complaints about the unauthorized practice of law and potential harm to the public do not amount to specific injuries.

The KBA and the Eulers claim that *Dennis* and its progeny are no longer good law in Kansas, citing *Hunt v. Washington Apple Advertising Comm'n,* 432 U.S. 333, 53 L. Ed. 2d 383, 97 S. Ct. 2434 (1977); *Families Against Corporate Takeover v. Mitchell,* 268 Kan. 803, 1 P.3d 884 (2000); and *NEA-Coffeyville v. U.S.D. No. 445,* 268 Kan. 384, 996 P.2d 821 (2000). We do not agree.

In *Hunt,* a Washington state agency created by statute to promote and protect the Washington state apple industry sought declaratory relief in federal court challenging the constitutionality of a North Carolina statute which limited the labeling of apples by grade other than the applicable federal grade. The result was that Washington state apple growers were prohibited from displaying the well-known Washington state apple grade on their products. The state agency sued, and North Carolina defended in part on the basis that the agency did not have standing to sue. The United States Supreme Court held that the Washington state agency had standing to bring the action in a representational capacity on behalf of its members, because the injuries to its members were direct and sufficient to establish a case or controversy; the suit sought to protect the rights of the Washington state apple industry, which was central to the agency's purpose, and the claims did not require individualized proof. 432 U.S. at 343-45.

This court relied upon *Hunt* in *NEA-Coffeyville.* There, a local chapter of the National Education Association sued a school district seeking a refund on health insurance premiums. The school district alleged that the local NEA chapter did not have standing to sue on behalf of its members. We disagreed, applying the *Hunt* test to determine that an association has standing to sue on behalf of its members when

"(1) the members have standing to sue individually; (2) the interests the association seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested require participation of individual members." 268 Kan. at 387.

We again referenced *Hunt* in *Families Against Corporate Takeover* (FACT). 268 Kan. 803. Because FACT filed a petition for review of an agency action under the Kansas Act for Judicial Re-

view and Civil Enforcement of Agency Actions (KJRA), this court first determined whether FACT had standing to sue on behalf of its members under the statutory requirements of the KJRA. We held that it did, then turned to the *Hunt* test. Applying the test, we concluded individual members of FACT made a showing that they suffered injury, FACT sought to protect interests germane to its purpose, and neither the claim asserted nor the relief requested required participation of individual FACT members. 268 Kan. at 810-11.

None of these three cases renders *Dennis, Rowlands, Leahy,* or *Bodine* bad law. In *Leahy,* although an unincorporated trade association challenged the activities of a state agency and a construction company with which it had contracted, our conclusion that the trade association did not have standing to seek a remedy in the form of mandamus was based squarely on the fact that the individual members of the association did not have standing on their own to complain about the wages paid under the contract. *Hunt, NEA-Coffeyville,* and *Families Against Corporate Takeover* are relevant to the question of whether the KBA has standing to sue on behalf of its members, but do not change the result suggested by *Leahy, Bodine, Rowlands,* and *Dennis. Hunt* merely adds another dimension to the issue and is as much of a stumbling block for the KBA as the other cases. Just as the Eulers have failed to show an interest or injury specific to themselves, so has the KBA failed to show the same on behalf of its individual members. The KBA thus fails the first prong of the *Hunt* test for associational standing—it has not shown that its individual members have standing to sue. In light of this failure, consideration of the other two *Hunt* factors is unnecessary.

Thus, strongest support for the KBA and the Eulers' arguments for standing is *Depew.* However, *Depew* is distinguishable. It involved a concrete, actually existing factual situation. It was an injunction action with no challenge to a statute. We do not deem *Depew* sufficient authority to uphold the petitioners' contentions.

The KBA and the Eulers seem to ask for this court's indulgence on the issue of standing because the underlying issue concerns the practice of law. This argument is less than convincing. Neither the

KBA, its members, nor the Eulers have shown a specific injury or interest not shared with the public at large. They do not have standing to seek a remedy in the form of mandamus.

In addition, the Judges allege there is no justiciable case or controversy and the petitioners' request for relief amounts to a demand for an advisory opinion.

The petitioners rejoin that they do not seek an advisory opinion. First, they argue, the statute as amended specifically requires district court judges to allow persons to appear in small claims court by unlicenced individuals in violation of the rules of this court. Second, the petitioners contend that the issue is unlikely to reach this court on appeal because no one facing an unlicenced representative in small claims court is likely to have the resources to pursue the issue through the court system. Third, the petitioners argue that mandamus is an appropriate method to test the constitutionality of a statute absent a case or controversy.

There are decisions which uphold the KBA and the Eulers' argument. In *Stephens,* 227 Kan. at 682, we said: "On occasion, this court, when confronted with significant issues of statewide concern, has broadened the availability of mandamus in order to expeditiously resolve the issues."

We further opined:

"The use of mandamus to secure a speedy adjudication of questions of law for the guidance of state officers and official boards in the discharge of their duties is common in this state. Our conceptions of the proper use of mandamus to expedite the official business of the state have expanded far beyond the ancient limitations of matters justiciable in mandamus. [Citation omitted.] Where a public official's action or refusal to act is based upon a statute whose validity is challenged, mandamus may lie in appropriate cases. [Citations omitted.]" 227 Kan. at 682-83.

Similarly,

"[m]andamus is a proper remedy where the essential purpose of the proceeding is to obtain an authoritative interpretation of the law for the guidance of public officials in their administration of the public business, notwithstanding the fact that another adequate remedy at law exists. [Citation omitted.] The burden to show the right to this extraordinary remedy is on the petitioner. [Citation omitted.]" *Legislative Coordinating Council v. Stanley,* 264 Kan. 690, 697, 957 P.2d 379 (1998).

In *State ex rel. Stephan v. Kansas House of Representatives*, 236 Kan. 45, 687 P.2d 622 (1984), the attorney general brought a mandamus action challenging the constitutionality of a statute which allowed the legislature to adopt, modify, or revoke administrative rules and regulations by concurrent resolution without presentment to the governor. This court held the statute unconstitutional and issued the writ.

A minority of three justices objected to the majority's decision as providing an advisory opinion and stated:

"The majority argues it need not impose the adequate remedy rule since the action by the court in this case would avoid numerous lawsuits, provide guidance to agencies, resolve an important question, and deal with the matter which would arise on appeal eventually. This is the 'expediency' test based on 'the end justifies the means' and is the greatest threat to the rule of law." 236 Kan. at 67-68. (Herd, J., dissenting).

The dissent further pointed out:

"The majority's next error is that there is no case or controversy in this case. Absent a case or controversy we have no jurisdiction. Courts do not deal with the constitutionality of a statute as a hypothetical question, nor can constitutional questions be dealt with as abstractions or academic discussions. [Citations omitted.] The state has not suffered a recognizable or identifiable injury by the legislature's alleged improper method of revocation and modification of agency rules and regulations. The majority states no injury is required when the action is brought 'to obtain both "an authoritative interpretation of the law for the guidance of public officials and their administration of the public business", and to question the constitutionality of the legislature's actions.' This again is the use of the 'end justifying the means,' the doctrine upon which tyranny is always premised. . . . The court's eagerness to rule, therefore, steps into the impermissible area of deciding a hypothetical and academic question. This is an advisory opinion." 236 Kan. at 69-70.

As they did in response to the Judges' standing argument, the KBA and the Eulers again seek to prevail upon this court's sensibilities regarding its power to regulate the practice of law to fashion the argument that the issue is urgent and must be resolved immediately. They point to *State ex rel. Stephan v. O'Keefe*, 235 Kan. 1022, 686 P.2d 171 (1984), where the attorney general brought an original action in mandamus against a district judge who appointed

nonattorney inmates to represent other inmates during district court proceedings.

In granting relief, we held:

"The practice of law is intimately entwined with the exercise of judicial power in the administration of justice. The right to define and regulate the practice of law naturally and logically belongs to the judicial department of the government. Under Article 3, Section 1 of the Constitution of Kansas only the Supreme Court has the inherent power to prescribe conditions for admission to the bar, and to define, supervise, regulate and control the practice of law. [Citation omitted.]

"This court has constitutional, statutory and inherent jurisdiction to inquire by what authority a district judge allows one not approved by the Kansas Supreme Court to practice law in this state and make appropriate orders relating thereto. A proceeding in the nature of mandamus is appropriate for that purpose." 235 Kan. at 1035-36.

The Judges point out that *O'Keefe* supports their argument that a mandamus action brought to prevent the unauthorized practice of law in district court should be brought by the attorney general, citing also *State ex rel. Stephan v. Williams,* 246 Kan. 681, 793 P.2d 234 (1990). There, the attorney general filed an original action in quo warranto seeking to enjoin Williams, a nonattorney, from the unauthorized practice of law in several district court cases. After an extensive factfinding process, this court granted relief. Significantly, as the Judges point out, this court noted that an original action in quo warranto was a proper method to determine whether an individual had been exercising the privilege of practicing law without benefit of a license. See also *State ex rel. Boynton v. Perkins,* 138 Kan. 899, 28 P.2d 765 (1934) (attorney general brought original action in quo warranto seeking to enjoin a Missouri attorney with no Kansas license from practicing law in Kansas). In each of these cases, unlike the situation at hand, petitioners' complaints were based on a specific instance of an individual or individuals practicing law without a license. Such facts are not shown in our case, as no specific violation is shown. Petitioners have at best presented only a hypothetical question.

The KBA and the Eulers have presented a claim for relief unsupported by a justiciable case or controversy. We decline to address the constitutionality of the small claims statutes where, as

here, it is presented as a hypothetical question—an issue which should be addressed upon a concrete set of facts. See *Babe Houser Motor Co. Inc. v. Tetreault,* (No. 85,012 filed this date).

Neither the KBA nor the Eulers have standing or present a case or controversy sufficient for us to consider the remedy of mandamus for the reasons set forth above. The Judges' motion to dismiss the petition for writ of mandamus is granted.

Petition dismissed.

MCFARLAND, C.J., not participating.

CAROL A. BEIER, J., assigned.